UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ORTHO-CLINICAL DIAGNOSTICS, INC.,

                                         Plaintiff,          DECISION and ORDER
-vs-
                                                                      18-CV-6416 CJS
MAZUMA CAPITAL CORP.,

                                       Defendant.
_____

INTRODUCTION

Ortho-Clinical Diagnostics, Inc. ("Ortho" or Plaintiff") brings this action alleging *inter alia* that Mazuma Capital Corp. ("Mazuma") has breached sale-and-leaseback agreements. Now before the Court is Mazuma's motion to dismiss the action pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure, based on a Utah forum-selection clause contained in the leases. The Rule 12(b)(6) application is granted and this action is dismissed.

FACTUAL BACKGROUND

Unless otherwise noted, the following factual summary is taken from the Complaint. Ortho is a New York Corporation and Mazuma is a Utah corporation. Ortho is an "in vitro diagnostics company" that manufactures "sophisticated diagnostic equipment," and Mazuma is a company that "provides equipment financing to various industries." In 2016, the parties entered into a sale-and-leaseback arrangement, utilizing several separate leases and security agreements ("the leases"), involving certain diagnostic machines manufactured by Ortho.

Under the arrangement, "Ortho received $36 million -- $27 million in cash and $9 million held back as a security deposit."

The subject leases included Utah forum-selection clauses and Utah choice-of-law provisions, stating in pertinent part:

> GOVERNING LAW: THIS LEASE . . . SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF UTAH INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE. THE PARTIES AGREE TO SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE STATE OF UTAH. ANY SUIT OR OTHER PROCEEDING BROUGHT BY EITHER PARTY TO ENFORCE OR CONSTRUE THIS LEASE . . . OR TO DETERMINE MATTERS RELATING TO THE PROPERTY OR THE RELATIONSHIP BETWEEN THE PARTIES HERETO SHALL BE BROUGHT ONLY IN THE STATE OR FEDERAL COURTS IN THE STATE OF UTAH. . . . FURTHERMORE, LESSEE WAIVES THE DEFENSE OF FORUM NON CONVENIENS.

Docket No. [#5-2].

The leases were for a 24-month term "Base Period," which would renew initially for an additional 12 months unless Ortho provided written notice to Mazuma, within 150 days prior to the end of the Base Period, that it wanted to negotiate for one of the following two options: (1) purchase the diagnostic machines back, "for a price to be determined by [Ortho and Mazuma]; or (2) terminate the arrangement and turn over the diagnostic machines to Mazuma, provided that, among other requirements, Ortho agree to lease other property from Mazuma. Of particular relevance here, the leases further stated:

> *In the event Lessor and Lessee have not agreed to either option (1) or (2) prior to the maturity of the Base Period, or if Lessee fails to give written*

2

> *notice via certified mail at least one hundred fifty (150) days prior to the maturity of the Base Period of its intent to negotiate*, or if an Event of Default has occurred under any Schedule, *then options (1) and (2) shall expire and the Schedule shall automatically renew as provided herein.* At the maturity of the initial twelve (12) month renewal period provided above, the Schedule shall continue in effect at the rate specified in the respective Schedule for successive periods of six (6) months, each subject to termination at the maturity of any such successive six-month renewal period by either Lessor or Lessee giving other party at least thirty (30) days prior written notice of termination. *Lessee acknowledges that Lessor has no obligation to enter into any agreement as a result of the initiation of discussions concerning options (1) or (2).*

Complaint at ¶ 19 (emphasis added). With regard to the negotiation of a purchase price under option (1) above, the parties further agreed that any such purchase price would "not be greater than fifty percent (50%) of the original Total Property Cost," meaning not greater than $18,168,281.55.[1]

On June 30, 2017, Ortho gave timely written notice to Mazuma that it did not want the leases to renew, and that it wanted to negotiate a purchase price for the leased equipment under option (1). Further, Ortho offered a purchase price of $2,375,000.00. Obviously, that offer was very far below 50% of the Total Property Cost; nevertheless, Ortho contends that it was "derived as a result of consultation with an outside equipment appraisal professional." Mazuma rejected that offer and made a counter-offer in the amount of "$18,168,281.56 --

---

[1] *See*, Complaint at ¶ 49 ("The Lease Agreements set forth a Total Property Cost of $36,336,563.11."); *see also id.* at ¶ ¶ 26, 35, 45 (setting forth the Total Property Cost for each of the three lease schedules, which together total the amount indicated at ¶ 49). At oral argument, Ortho's counsel essentially argued that this provision was meaningless, because Mazuma had *orally* assured Ortho that it would negotiate for a purchase price in the range of 15-20% of the Total Property Cost.

representing Mazuma's calculation of the maximum purchase amount permitted under the terms of the Lease Agreements." Thereafter, with the parties not having reached any agreement under options (1) or (2),[2] Mazuma expressed its understanding that pursuant to the lease terms summarized earlier, the leases would automatically renew. In response, Ortho commenced this action.

Ortho's Complaint in this action includes a claim for a declaratory judgment that Ortho has fully complied with its contractual obligations; a claim for a declaratory judgment that the lease provision calling for automatic renewal is unenforceable;[3] a claim for breach of contract; a claim for specific performance (return of security deposit); a claim for conversion (security deposit); and a claim for breach of the implied covenant of good faith and fair dealing. Subject-matter jurisdiction is based on diversity, and venue in this district is premised on 28 U.S.C. § 1391(b)(2).

On July 2, 2018, Mazuma filed the subject motion to dismiss the Complaint pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3) and 12(b)(6), all based upon the Utah forum-selection clause.

On July 16, 2018, Ortho filed its opposition [##7-9] to the motion to dismiss, raising the following points: 1) the motion should be denied because venue is

---

[2] Ortho apparently had no interest in Option (2).
[3] Ortho contends, in part, that the automatic renewal provision is unenforceable under New York law (General Obligations Law § 5-901) insofar as it is based on a failure to give timely notice of the intention to negotiate; however, as discussed below the referenced section of New York law is irrelevant, since Ortho gave timely notice; as is clear from the face of the Complaint, the automatic renewal at issue in this lawsuit flows from the inability of the parties to agree on a purchase price, not on a failure to give notice.

proper in this district under 28 U.S.C. § 1391 and the decision by the U.S. Supreme Court in *Atlantic Marine Const. Co., Inc. v. U.S. District Court for the Western District of Texas*, 571 U.S. 49, 134 S.Ct. 568 (2013) ("*Atlantic Marine*") established that Rule 12(b) cannot be used to dismiss an action based on a forum-selection clause; and 2) the forum-selection clause is unenforceable because it contravenes the public policy of the State of New York as expressed in New York General Obligations Law ("GOL") § 5-901,[4] is unconscionable and "contravenes the public policy of judicial economy." Primarily, Ortho argues that GOL § 5-901 represents a strong public policy of the State of New York, and renders the leases' automatic-renewal provision unenforceable, since Mazuma failed to give Ortho a statutorily-required notice reminding Ortho of the need to give written notice to prevent the leases from automatically renewing. (As already noted, Ortho gave such notice as required by the leases, despite Mazuma's failure to give the timely notice required by GOL § 5-901). Ortho maintains that it would be unjust and against New York's public policy to enforce the forum-selection clause, since "Utah has no statute comparable to [GOL] § 5-901." Ortho further contends that New York generally considers "automatic renewal provisions" unconscionable. Additionally, Ortho maintains that enforcing the forum-selection clause would "contravene the public policy of judicial economy," since the leased property is physically located in New York.

---

[4] According to Ortho, GPL § 5-901 "seeks to protect all businessmen from fast talking sales organizations armed with booby traps which they plant in business contracts involving equipment rentals." Pl. Memo of Law in Opposition at p. 13 (citation omitted).

On July 27, 2018, Mazuma filed a reply [#14] raising the following points: 1) Ortho has neither disputed that the forum-selection clause is presumptively enforceable nor rebutted that presumption; 2) the *Atlantic Marine* decision pertained to motions under Rule 12(b)(3), but expressly did not decide whether motions can still be brought under Rule 12(b)(6) to dismiss based on a forum-selection clause; and 3) even assuming that the motion is improper under Rule 12(b), the Court can *sua sponte* convert Mazuma's motion to dismiss into a motion to transfer venue under 28 U.S.C. § 1404(a). With regard to the first of these arguments in the reply, Mazuma contends that the public policy behind GOL § 5-901 "has been satisfied" in this case, since Ortho gave timely notice to prevent the leases from automatically renewing. *See,* Reply at p. 7 ("Mazuma acknowledges receipt of the notice and no deadline was missed by Ortho. Thus, there is no 'booby trap' that Ortho was unaware of."). As for Ortho's contention that New York law generally disfavors unconscionable contract provisions, Mazuma points out that Ortho has not shown that Utah's law is any less protective of Ortho's interests, and that in fact, Utah law also disfavors unconscionable contract clauses. Finally, Mazuma contends that Ortho's "judicial economy" argument lacks merit.

On February 28, 2019, counsel for the parties appeared before the undersigned for oral argument.[5] The Court has carefully considered the parties'

---

[5] At oral argument, Ortho's counsel essentially argued that the presumption of enforceability of the forum-selection clause is rebutted here, because if the action proceeds in Utah, Ortho will lose the benefit of GOL § 5-901. Ortho's counsel further indicated that if this Court performed a choice of law analysis, it would conclude that Utah law applies, but that Ortho would still be able to use GOL § 5-901 as a defense, since if reflects a public policy of New York. Mazuma's

submissions and the arguments made by counsel during oral argument.

DISCUSSION

12(b)(6) Motion

Mazuma has moved to dismiss based in part on Rule 12(b)(6), and the legal standards to be applied on a motion to dismiss pursuant to that rule are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and internal quotation marks omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief

---

counsel indicated that GOL § 5-901 does not apply to the parties' dispute (since the automatic renewal of the lease about which Ortho is complaining was not the result of a failure to give notice), and that even if it did, Ortho has provided no authority for the idea that a case involving the application of GOL § 5-901 must proceed in New York.

> above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).

<u>Rule 12(b) Motions to Dismiss Based on Forum-Selection Clauses</u>

The Second Circuit has indicated that a motion to dismiss based on a contractual forum-selection clause may be brought under Rule 12(b). *See, TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 473 (2d Cir. 2011) ("We reject [the appellant's argument that Rule 12(b) cannot be used to dismiss an action based on a forum-selection clause] and hold, consistent with our precedents, that a defendant may seek enforcement of a forum selection clause through a 12(b) motion to dismiss, even when the clause provides for suit in an alternative federal forum."); *see also, id.* at 475 ("The enforcement of a forum selection clause through a Rule 12(b) motion to dismiss is a well-established practice, both in this Circuit and others."). In other words, a defendant is not required to move, pursuant to 28 U.S.C. § 1404, to have the action transferred to the forum specified in the forum-selection clause, but may instead seek dismissal of the action. *Id.*

In *Atlantic Marine*, cited earlier, the U.S. Supreme Court clarified that Rule 12(b)(3) is not an appropriate section under which to seek dismissal based on a forum-selection clause where the action was filed in a venue permitted by 28 U.S.C. § 1391, but left

undecided the question of whether Rule 12(b)(6) may be used to obtain such dismissal. *Atlantic Marine*, 571 U.S. at 61, 134 S.Ct. at 580. Accordingly, the Second Circuit rule cited above, affirming the use of Rule 12(b) to seek dismissal based on a forum-selection clause, remains good law at least with respect to Rule 12(b)(6). *See, In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 4634541, at *30, n. 59 (S.D.N.Y. Aug. 4, 2015) ("*Atlantic Marine* does not disturb Second Circuit precedent holding that a court may enforce a forum selection clause by granting a motion to dismiss."), amended sub nom. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2015 WL 13122396 (S.D.N.Y. Oct. 19, 2015).

When deciding whether to dismiss an action based on a forum-selection clause, courts must consider the "*Bremen*"[6] factors. *TradeComet.com LLC v. Google, Inc.*, 647 F.3d at 475 ("In determining whether a Rule 12(b) motion to dismiss pursuant to a forum selection clause was properly granted, we have analyzed the enforceability of such clauses by applying the standards set forth by the Supreme Court in *Bremen*.") (citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007), other citations omitted). This four-part analysis is as follows:

> The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement. The second step requires us to classify the clause as mandatory or permissive, *i.e.*, to decide whether the parties are required to bring any dispute to the designated forum or simply permitted to do so. Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause.
>
> If the forum selection clause was communicated to the resisting party, has

---

[6] *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907 (1972).

mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

*S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705, 708 (2d Cir. 2010) (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d at 383-384). More particularly,

> [a] forum selection clause will thus be enforced unless (1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.

*Fagbeyiro v. Schmitt-Sussman Enterprises, Inc.*, No. 17-CV-7056 (VSB), 2018 WL 4681611, at *2 (S.D.N.Y. Sept. 28, 2018) (citations omitted). "These exceptions are interpreted narrowly." *MBC Fin. Servs. Ltd. V. Boston Merch. Fin., Ltd.*, 704 F. App'x. 14, 18 (2d Cir. Aug. 23, 2017).

Where, as in this case, the party opposing the enforcement of the forum-selection clause argues that its enforcement would "contravene a strong public policy" of the forum in which the suit was brought, it must show that the available remedies under the law of the forum named in the forum-selection clause are "insufficient" to deter the opposing party's alleged wrongful conduct. *See, Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1363-1366 (2d Cir. 1993) ("*Roby*") ("We believe that if the [Plaintiffs] were able to show that available remedies in England are insufficient to deter British issuers from exploiting American investors through fraud, misrepresentation or inadequate disclosure, we would not hesitate to condemn the choice of law, forum selection and arbitration clauses as

against public policy.").

In this regard, it is not sufficient to merely point out the public policy of the forum in which the action was originally filed; rather, the party opposing the forum-selection clause must show that enforcement of the forum-selection clause would violate that public policy:

> As to the ["public policy"] exception, MBCFX argues that enforcement would contravene the United States' strong public policy of protecting financial markets insofar as defendants operate within the United States. To overcome the presumption of enforcement on this exception, however, MBCFX must demonstrate "that available remedies [under BVI law] are insufficient to deter [BVI] issuers from exploiting American investors through fraud, misrepresentation or inadequate disclosure." *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1365 (2d Cir. 1993); *see id.* at 1363 ("[I]t is not enough that the foreign law or procedure merely be different or less favorable than that of the United States."). MBCFX makes no such showing. It merely points to the purpose of the CEA, without either asserting that it would be deprived of comparable remedies if forced to litigate in Switzerland under BVI law or explaining how the purpose of the CEA would be undermined if plaintiff were limited to the remedies available in Switzerland. *See Martinez v. Bloomberg LP*, 740 F.3d at 229 (holding that mere inability to pursue United States statutory cause of action in England did not defeat enforcement of forum selection clause). Accordingly, the public policy exception does not apply in this action.

*MBC Fin. Servs. Ltd. v. Bos. Merch. Fin., Ltd.*, 704 F. App'x at *18; *see also, S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d at 712 ("The district court properly [found] that the mere speculation as to what rights SKI would or would not maintain in St. Petersburg [(St. Petersburg, Russia, the forum designated in the forum-selection clause)] was not sufficient to rebut the presumption of validity of the forum selection clause [under the "public policy" exception.]") (citation and internal quotation marks omitted).

Further, the party opposing enforcement of the forum-selection clause must show that enforcement would actually result in a contravention of public policy in the particular

case. For example, in *Roby*, cited earlier, the Second Circuit found that the party opposing the forum-selection clause had failed to rebut the presumption of enforceability by showing that the forum-selection clause (designating England as the forum) contravened the public policy of the United States, since it had not shown that it would lack remedies in England, or that the U.S.'s public policy would actually be subverted *in that case* if the forum-selection clause was enforced. *See, Roby*, 996 F.2d at 1365 ("We are satisfied not only that the [Plaintiffs] have several adequate remedies in England to vindicate their substantive rights, but also that in *this* case the policies of ensuring full and fair disclosure and deterring the exploitation of United States investors have not been subverted.") (emphasis in original).

### The Subject Action

Applying all of the foregoing principles to this action, the Court finds, first, that Mazuma is correct to assert both that this motion can be maintained under Rule 12(b)(6), and that the forum-selection clause is presumptively enforceable based upon application of the first three *Bremen* factors set forth above.

Further, the Court finds that Ortho has not rebutted that presumption by demonstrating that enforcement of the forum-selection clause would contravene the public policy of the State of New York. In that regard, the Court notes preliminarily that GOL § 5-901 states as follows:

> No provision of a lease of any personal property which states that the term thereof shall be deemed renewed for a specified additional period unless the lessee gives notice to the lessor of his intention to release the property at the expiration of such term, shall be operative unless the lessor, at least fifteen days and not more than thirty days previous to the time specified for the furnishing of such notice to him,

shall give to the lessee written notice, served personally or by mail, calling the attention of the lessee to the existence of such provision in the lease. Nothing herein contained shall be construed to apply to a contract in which the automatic renewal period specified is one month or less.

N.Y. Gen. Oblig. Law § 5-901 (McKinney 2019). Thus, § 5-901 is directed specifically at a particular type of lease provision, namely, a provision "which states that the term thereof shall be deemed renewed for a specified additional period unless the lessee gives notice to the lessor of his intention to release the property at the expiration of such term."

In this action, the subject leases contain such a provision, but such fact is entirely incidental to this action for several reasons. First, it is undisputed that Ortho gave timely notice to Mazuma under the leases, notwithstanding Mazuma's failure to first give notice as required by GOL § 5-901. Practically speaking, therefore, New York's public policy has already been vindicated, since Ortho was aware of the notice provision, and was not victimized by any contractual-notice "booby trap."[7]

More importantly, it is plain from the Complaint that the notice provision is not the lease provision upon which Mazuma is relying to argue that the leases have automatically renewed. Instead, the Complaint clearly indicates that Mazuma is contending that the leases automatically renewed because the parties did not reach an agreement on a purchase price for the leased equipment, which involves a separate aspect of the parties' agreement that is completely unrelated to notice:

> In the event Lessor and Lessee have not agreed to either option (1) or (2) prior to the maturity of the Base Period [the initial 24-month lease term], *or if Lessee fails*

---

[7] *See*, Pl. Memo of Law in Opposition at p. 13 (Stating that GPL § 5-901 "seeks to protect all businessmen from fast talking sales organizations armed with booby traps which they plant in business contracts involving equipment rentals.").

> *to give written notice via certified mail at least one hundred fifty (150) days prior to the maturity of the Base Period of its intent to negotiate*, or if an Event of Default has occurred under any Schedule, <u>then options (1) and (2) shall expire and the Schedule shall automatically renew as provided herein</u>.

Complaint at ¶ 19 (emphasis added). Therefore, even assuming *arguendo* that GOL § 5-901 applied at all in a case such as this where the lessee gave timely notice notwithstanding the lessor's failure to give notice, application of the statute would only result in the non-enforcement of the italicized "provision" in the preceding sentence, not the underlined provision. *See*, GOL § 5-901. At least, Ortho has not shown that New York's public policy disfavors contractual provisions such as the underlined provision.

Consequently, in this Court's view, Ortho's attempt to rely upon NY GOL § 5-901 to defeat the forum-selection clause is misplaced and without merit. GOL § 5-901 and its underlying policy considerations might be implicated if Mazuma was attempting to argue that the leases automatically renewed because Ortho failed to give timely notice. However, there is no indication that Mazuma has ever taken that position. In sum, enforcement of the forum-selection clause in this action will in no way contravene the public policy of the State of New York as expressed in GOL § 5-901.

Nor has Ortho otherwise shown that its remedies under Utah law are "insufficient." For example, Ortho has not shown that Utah law is less-protective of lessees who are faced with allegedly-unconscionable lease provisions. Ortho also has not shown that its "judicial economy" public-policy theory has merit. In that regard, Ortho refers to a separate action that Mazuma has filed in Utah, seeking, among other things, replevin of

the leased equipment, and argues that such claim cannot be maintained in Utah.[8]  Ortho therefore essentially contends that this Court should decline to enforce the clear forum-selection clause since Mazuma's Utah replevin claim might someday be re-filed in New York or transferred to New York.  However, to the extent that this speculative argument can be characterized as somehow implicating the public policy of the State of New York, it is insufficient to defeat Mazuma's motion.

For all of the foregoing reasons, Mazuma's motion is granted, since Ortho has not rebutted the presumption that the subject forum-selection clause is enforceable.

CONCLUSION

Defendant's motion to dismiss [#5] is granted and this action is dismissed.

SO ORDERED.

Dated:   Rochester, New York
          March 7, 2019

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[8] *See*, Ortho's Memo of Law in Opposition at p. 18 ("Because the property is located in New York, however, Mazuma's replevin action must be brought in a New York court.").